## LORAIN STEEL COMPANY *vs.* NORFOLK AND BRISTOL STREET RAILWAY COMPANY.

Norfolk.   January 15, 1905. — March 3, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Street Railway.   Realty.   Sale,* Conditional.   *Statute,* Construction.   *Conversion. Damages.   Words,* "Rolling stock."

The rails of a street railway company laid in a public street remain personal property, such a company having no interest in the soil of the street of which the rails on annexation can become a part.

One who sells trucks and motors to a street railway company under a contract of conditional sale, retaining the title until paid the price in full, has a good title against a purchaser of the property of the railway company at a foreclosure sale under a mortgage, although neither the mortgagee nor the purchaser had notice of the existence of the contract of conditional sale.

St. 1894, c. 326, (R. L. c. 111, § 75,) requiring the recording of conditional sales of "street railway rolling stock" in the office of the secretary of the Commonwealth, and that each engine or car shall be marked with the name of the vendor, does not apply to conditional sales of separate parts of cars, and one who sells trucks and motors to a street railway company, retaining the title until paid the price in full, so long as he remains unpaid has a good title against a purchaser of the property of the railway company at a foreclosure sale, although neither the mortgagee nor the purchaser had notice of the existence of the contract of conditional sale.

The use of a word in the title of a statute cannot be held to control or enlarge the words of the statute unless they are of doubtful meaning or ambiguous.

If, in reply to a demand of the owner of personal property for its delivery, the person having possession of the property denies having possession of any property belonging to the person making the demand and says that if he had any of the articles demanded he should refuse to deliver them, this is evidence of the exercise of dominion over the chattels, a denial of the demandor's title and an exclusion of the owner from possession, which can be found to be a conversion.

In an action for the conversion of chattels sold by the plaintiff under a contract by which he was to retain the title until the purchase money had been paid in full, the defendant cannot show in reduction of damages that the debt has been reduced by part payments so that the amount of the purchase money unpaid is less than the market value of the property converted.   In such a case the ordinary rule applies that the plaintiff can recover the value of the property at the time of the conversion with interest from the date of the conversion to the date of the verdict.

TORT, for the alleged conversion of certain rails, trucks, motors and motor equipments named in a schedule attached to the declaration.   Writ dated June 16, 1902.

In the Superior Court the case was heard by *Pierce*, J., without a jury, upon the pleadings and an auditor's report. The plaintiff claimed title as assignee of the Johnson Company, a Massachusetts corporation, the unpaid vendor of the property named in the declaration under a contract of conditional sale to the Norfolk Southern Street Railway Company. The defendant claimed title through the purchaser of the property of the Norfolk Southern Street Railway Company at a foreclosure sale under a mortgage made by that company. The judge found the facts to be as found by the auditor, and upon those facts ruled *pro forma*, as matter of law, that the plaintiff was entitled to judgment in the sum of $20,000, and reported the case upon the pleadings and the facts as stated in the auditor's report for determination by this court. If the ruling was correct, judgment was to be entered for the plaintiff for the sum of $20,000. If the ruling was not correct, such judgment was to be entered as in the opinion of the court law and justice might require.

*J. A. Stiles*, for the plaintiff.

*T. Hunt*, for the defendant.

BRALEY, J. Whatever title the plaintiff has to the property described in the declaration is under a written agreement made by the Johnson Company with the Norfolk Southern Street Railway Company to furnish and equip with rails, trucks, motors and motor equipments the street railway now owned and operated by the defendant.

It was expressly provided by the contract, that the materials made or supplied for this purpose should remain the property of the vendor until payment therefor had been fully made.

This condition has not been complied with, and unless its performance has been waived, or the defendant has acquired a paramount title, the vendor, and hence the plaintiff which has succeeded to its rights, can maintain replevin to recover the rails and other articles delivered, or tort in the nature of trover for their conversion, even if the mortgagee, under whom the defendant claims, is found to be a purchaser for value and without notice. *Coggill* v. *Hartford & New Haven Railroad*, 3 Gray, 545, 547. *Deshon* v. *Bigelow*, 8 Gray, 159. *Armour* v. *Pecker*, 123 Mass. 143, 145. *Wentworth* v. *Woods Machine Co.* 163

Mass. 28.   *Cottrell & Sons Co.* v. *Carter, Rice, & Co.* 173 Mass. 155, 159, and cases cited.   *Oliver Ditson Co.* v. *Bates,* 181 Mass. 455.

When the contract was entered into and the rails delivered it was understood that they were to be used in the construction of a track for the railway company, and an assent to such use by the vendor is implied from the very nature of the undertaking.

The track was built in the ordinary way by spiking the rails to sleepers laid within the location in the public ways granted to the company, and the defendant claims that such an annexation to the soil changed them from personalty to realty, and that an action will not lie for their conversion, as the plaintiff concedes that the American Loan and Trust Company, mortgagee in the mortgage, under the foreclosure of which the defendant claims its title, was ignorant of the conditional agreement.

In support of this contention it relies upon the settled rule that rails affixed in the usual manner to the roadbed of a railroad, if there is no agreement to the contrary, become part of the realty, and where there is such an agreement while the rails as between the seller and the railroad are personalty, if the roadbed is mortgaged to a mortgagee who has no notice of the agreement, and a foreclosure follows, the purchaser at the sale acquires a good title against the vendor.   *Hunt* v. *Bay State Iron Co.* 97 Mass. 279.   *Meagher* v. *Hayes,* 152 Mass. 228.

There is, however, a clear distinction between the nature of a right of way acquired by a railroad, and the ordinary grant of a location in the public ways to a street railway.

When not obtained by purchase a railroad corporation lays its rails on land in which a right in the nature of a permanent easement has been taken by the exercise of the delegated power of eminent domain, and thus an interest in real estate is acquired.   *Barnes* v. *Boston & Maine Railroad,* 130 Mass. 388.

Within the limits of the layout it has the exclusive use and control of its roadway for all purposes authorized by its charter whether by a special act of incorporation, or under the general laws, subject only to such transitory invasions as may be required by a public emergency.   *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad,* 104 Mass. 1.   *Sweeney* v. *Boston &*

*Albany Railroad*, 128 Mass. 5, 6.  *Peirce* v. *Boston & Lowell Railroad*, 141 Mass. 481, 486.

And among the uses to which the location lawfully can be put are not only the construction and maintenance of the road-bed for the running of trains, but also of buildings necessary for carrying on the business of a common carrier as ordinarily conducted.  *Peirce* v. *Boston & Lowell Railroad, ubi supra.*

The interest in land thus acquired and held takes on all of the characteristics of an estate in fee, with the single exception that where the taking is of an easement alone when the use ceases, the easement is at an end, and for this reason the general rule of the common law that what is annexed to the freehold by the owner becomes a part of the realty and passes by his deed is held applicable to conveyances made by a railroad of its right of way, roadbed and track.  *Butler* v. *Page*, 7 Met. 40. *Hunt* v. *Bay State Iron Co., ubi supra.*

But a street railway gains no easement or freehold interest in the soil, or exclusive control of the highways in which a location is granted to lay tracks and operate the road.  The right conferred is to use the way within its location in common with others, and not exclusively for its own benefit.  The whole way is as fully open to the lawful use of travellers after the road is built and in operation as before.  *Middlesex Railroad* v. *Wakefield*, 103 Mass. 261.  *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515, 517.  *O'Brien* v. *Blue Hill Street Railway*, 186 Mass. 446, 447.

The use of a public way by a street railway is on the same footing as its use by other quasi public corporations for the laying of gas and water pipes, or the erection of poles and wires for the use of telegraph, telephone and electric light companies, that are all recognized as agencies for the larger accommodation of the public, under whose rights they are allowed to come in and participate in the enjoyment of an easement, payment for which has already been made.  *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397, 399, and cases cited.

It consequently has been held that gas and water pipes, manholes, conduits, wires and poles used for the transmission of intelligence, or supplying light by electricity, laid, placed or erected and maintained in public streets are personal property,

which the owner may remove ; but if not removed, and the street is appropriated for another public use which requires their removal, as no interest in land is taken, the owner is not entitled to damages.    *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75.    *Natick Gas Light Co.* v. *Natick,* 175 Mass. 246, 248.    *Dudley* v. *Jamaica Pond Aqueduct,* 100 Mass. 183.    *New England Telephone & Telegraph Co.* v. *Boston Terminal Co., ubi supra. Boston Electric Light Co.* v. *Boston Terminal Co.* 184 Mass. 566.

The Norfolk Southern Street Railway Company had no authority to exercise the right of eminent domain ; nor could it acquire title by purchase from the municipalities, as they were not authorized to sell or convey such an interest in the public ways ; and the grant of a location only conferred a particular right under certain conditions to use a public easement in common with the public.    It therefore gained no interest in the soil of the streets through which its track was laid.    *Attorney General* v. *Metropolitan Railroad, ubi supra.*    See also *Springfield* v. *Springfield Street Railway,* 182 Mass. 41, 47, 48.

The case of *Clemens Electrical Manuf. Co.* v. *Walton,* 173 Mass. 286, on which the defendant relies as sustaining a different view is not an authority in its favor, for it is expressly said in the opinion that it was not necessary to decide whether the rails became realty and followed the soil or remained personal property.

By the laying of the rails as a part of the defendant's track they did not lose their character of personalty and become realty by the fact of annexation because the defendant's predecessor had no land, or interest in land, of which they could form a part.

The conditional sale also included, and the plaintiff seeks to recover for the conversion of the trucks, motors and motor equipments.

But the defendant urgently insists that under St. 1894, c. 326, they must be classed as " street railway rolling stock ", a conditional sale of which is not valid against a purchaser in good faith and without notice unless shown by a written instrument duly acknowledged and recorded in the office of the secretary of the Commonwealth.

If the language employed is given its ordinary meaning, the rolling stock of street railways means cars fully equipped for the transportation of passengers, or of freight, so far as they are permitted to transport merchandise.   The requirement that each car held by such a title shall be plainly marked on each side with the name of the vendor followed by the word " owner ", applies to the completed vehicle, and not to the separate parts of trucks, motors, trolley pole, electric wiring and frame of the car of which the whole is composed.   It is the car, and not its component parts, that is meant.   *Commonwealth* v. *Boston Terminal Co.* 185 Mass. 281, 288.

The purpose of the statute is to afford protection to attaching creditors and purchasers of the character described in the act, and to prevent them from being misled to their injury by a debtor or vendor who has no title to property of this description though in its possession, and which it apparently owns, but where the ownership at the time is actually in another.

Nor is this meaning changed, as claimed by the defendant, by the use of the word " equipment " in the title of the act.   The title of itself cannot be held to control or enlarge the words of the statute unless they are doubtful or ambiguous.   *Charles River Bridge* v. *Warren Bridge,* 7 Pick. 344, 454, 455.   *Proprietors of Mills* v. *Randolph,* 157 Mass. 345, 350.   *United States* v. *Oregon & California Railroad,* 164 U. S. 526, 541. *Yazoo & Mississippi Valley Railroad* v. *Thomas,* 132 U. S. 174, 188.

The words " locomotive engine or car " which are used only once in the act must be held to refer to the words " railroad or street railway rolling stock," also used in the same section ; and this construction appears in the last revision of the statutes. R. L. c. 111, § 75.   This defence cannot be sustained.

No claim is made by the defendant that there was a waiver of title under the contract in favor of the mortgagee, for if the vendee was permitted by its provisions to mortgage the property to the Beacon Trust Company, this did not authorize a mortgage to the American Loan and Trust Company, to which the plaintiff never consented, and of which it had no notice until after the mortgage had been delivered and the bonds which it was given to secure had been issued.

Having proved its title and right to possession, the plaintiff must also show a conversion of the property by the defendant.

Putting to one side the finding of the auditor that at the date of the defendant's purchase it knew, or was bound to know, the provisions of the conditional contract, his report shows that before the action was brought a demand was made on the defendant for the property as described in the declaration. The written reply by the defendant's president denied possession of any property belonging to the plaintiff, coupled with the statement that if it had " any of the articles . . . we should refuse to deliver them." This was evidence showing the exercise of dominion over the chattels, a denial of the plaintiff's title, and its exclusion from possession, and supports the finding of conversion. *Scollard* v. *Brooks*, 170 Mass. 445, 448. See also *Gilmore* v. *Newton*, 9 Allen, 171.

Even if the amount originally due has been reduced by payments so that the remainder of the unpaid purchase price is less than the market value of the property converted, yet the plaintiff has the general title, with the right to immediate possession by reason of the failure of the defendant to comply with the conditions of the contract.

If such right of possession had been asserted and the property retaken without suit, the vendee under a contract like this would have no cause of action to recover back money already paid, and where such a claim cannot be directly asserted, and is not actionable, it is not admissible in evidence either by way of mitigation of damages or to avoid circuity of action. *Angier* v. *Taunton Paper Manuf. Co.* 1 Gray, 621. *Buckmaster* v. *Smith*, 22 Vt. 203. *Brown* v. *Haynes*, 52 Maine, 578.

No sufficient reason appears why the usual rule as to damages recoverable in trover should not be followed, which allows to the plaintiff the market value of the property converted, with interest from the time of conversion to the date of the verdict, or of the finding by the court. *Greenfield Bank* v. *Leavitt*, 17 Pick. 1, 3. *Forbes* v. *Boston & Lowell Railroad*, 133 Mass. 154, 158. *East Tennessee Land Co.* v. *Leeson*, 183 Mass. 37, 41.

Inasmuch as the auditor under the agreement of the parties finds the market value of the rails to have been $20,000, of the trucks $1,350, and of the motors $450, amounting to the entire

sum of $21,800, in accordance with the reservation in the report from the Superior Court the plaintiff is entitled to recover this amount, with interest on the value of the rails, trucks and motors, from June 10, 1902, the date of conversion, to the time of entering judgment.

*So ordered.*